SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
FRANK FALZETTA, Cal. Bar No. 125146
BRENDA BISSETT, Cal. Bar No. 116642
JENNIFER M. HOFFMAN, Cal. Bar No. 240600
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398
E-mail:     ffalzetta@sheppardmullin.com
          bbissett@sheppardmullin.com
          jhoffman@sheppardmullin.com

Attorneys for Plaintiffs WEST
AMERICAN INSURANCE COMPANY,
PEERLESS INSURANCE COMPANY,
and AMERICAN FIRE AND
CASUALTY COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, an Indiana corporation; PEERLESS INSURANCE COMPANY, a New Hampshire corporation, and AMERICAN FIRE AND CASUALTY COMPANY, a New Hampshire corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NUTIVA, INC. a California corporation, <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT |

Plaintiffs, West American Insurance Company ("West American"),

Peerless Insurance Company ("Peerless"), and American Fire and Casualty

Company ("American Fire") (West American, Peerless, and American Fire are

-1-

referred to herein, collectively, as "Plaintiffs") for their complaint against Defendant Nutiva, Inc. ("Nutiva"), allege as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b), in that Plaintiffs are informed and believe that (i) Nutiva is a corporation organized and existing under the laws of the State of California, with its principal place of business in this district, and (ii) a substantial part of the events giving rise to the claim occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

3.    Assignment of this action to the San Francisco or Oakland Division is appropriate in that the action arises out of insurance policies issued to Nutiva at its principal place of business in Contra Costa County, California and a related action, titled *Jones et al. v. Nutiva, Inc.*, which was originally filed in Superior Court of the State of California, County of Contra Costa, Case No. C16-00014, and is currently pending in the United States District Court for the Northern District of California – San Francisco Division, Case No. 3:16-CV-00711-HSG (the "Underlying Action").

## PARTIES

4.    Plaintiff West American is an Indiana corporation, with its principal place of business in the State of Massachusetts, and is, and was at all relevant times, qualified to do business in California.

5.    Plaintiff Peerless is a New Hampshire corporation, with its principal place of business in the State of Massachusetts, and is, and was at all relevant times, qualified to do business in California.

6.     Plaintiff American Fire is a New Hampshire corporation, with its principal place of business in the State of Massachusetts, and is, and was at all relevant times, qualified to do business in California.

7.     Plaintiffs are informed and believe that defendant Nutiva is a California corporation, with its principal place of business in Contra Costa County, California.

## PRELIMINARY ALLEGATIONS

**A.**     **The Underlying Action**

8.     On January 8, 2016, Preston Jones filed a putative class action complaint against Nutiva in the Underlying Action (the "Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached hereto as Exhibit "1."

9.     The Underlying Complaint alleged that coconut oil is inherently unhealthy, and that Nutiva falsely advertised and misbranded its coconut oil products as healthy.

10.    The Underlying Complaint further alleged that Mr. Jones and other similarly situated Californians suffered economic injury when they purchased Nutiva's coconut oil products.

11.    The Underlying Complaint specifically alleged:

   1.    Nutiva misleadingly markets various coconut oil products as both inherently healthy and as a healthy alternative to butter and other oils, despite that [sic] coconut oils is actually inherently *unhealthy*, and a *less healthy* option to these alternatives. Nutiva's coconut oil labeling and advertising also violates several federal and California state food regulations.

   2.    Plaintiff relied upon Nutiva's misleading and unlawful claims when purchasing Nutiva coconut oil, and was damaged as a result. He brings this action on behalf of himself, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), Unfair Competition Law, Cal Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and False Advertising Law, id. §§ 17500 et seq. ("FAL"). Plaintiff further

alleges that Nutiva breached express and implied warranties under state law.

3. Plaintiff seeks an order, inter alia, compelling Nutiva to cease marketing its coconut oil products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution, damages and punitive damages as allowed by law.

\*     \*     \*

53. Consumers are generally willing to pay more for foods they perceive as being healthier, or healthier than other alternatives. …

54. Nutiva is well aware of consumer preference for healthful foods, and therefore employs and has employed a strategic marketing campaign intended to convince consumers that its coconut oil products are "healthy," despite that they are almost entirely composed of saturated fat.

55. More specifically, Nutiva's health marketing strategy focuses on highlighting that the coconut oil products are "cholesterol free-" and contain some medium chain triglycerides.

\*     \*     \*

93. Plaintiff Preston Jones has purchased Nutiva coconut oil products approximately two times. …

94. When deciding to purchase Nutiva Virgin Coconut Oil, plaintiff read and relied on the following claims contained on Nutiva Virgin Coconut Oil's label:

    a.    "Nurture Vitality"
    b.    "Organic Superfood"
    c.    "100% less cholesterol than butter"
    d.    "Coconut is one of the world's most nourishing foods"
    e.    "Contains 62% medium chain triglycerides (MCYs) along with lauric and caprylic acids"
    f.    "is 'better than butter'"
    g.    "A nutritious substitute in baking"
    h.    "0g trans fat" and "non-hydrogenated."

95. Based on these representations, plaintiff believed Nutiva Virgin Coconut Oil was healthy, healthier than butter,

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

and would not raise or otherwise detriment his blood cholesterol levels.

96.   When purchasing Nutiva Virgin Coconut Oil, plaintiff was seeking a product that had the qualities described on the product's label, namely, a nourishing, nutritious superfood that was better than butter, the consumption of which would not increase his risk of CHD, stroke and other morbidity.

97.   These representations, however, were false and misleading, and had the capacity, tendency and likelihood to confuse or confound plaintiff and other consumers acting reasonably (including the putative Class members) because, as described in detail herein, the Nutiva coconut oils are not healthy, but instead their consumption increases the risk of CHD, stroke and other morbidity.

98.   Plaintiff is not a nutritionist, food expert, or food scientist, but rather lay consumer who did not have the specialized knowledge that Nutiva had regarding the nutrients in its coconut oils.

99.   Plaintiff acted reasonably in relying on the health and wellness claims that Nutiva intentionally placed on the Virgin Coconut Oil's packaging with the intent to induce average consumers into purchasing the product.

100.   Nutiva coconut oils cost more than similar products without misleading labeling and/or would have cost less in the marketplace (i.e., would have demanded a lower price) absent the false and misleading statements complained of herein.

101.   Plaintiff paid more for Nutiva Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase the product at all, absent the false and misleading labeling complained of herein.

102.   For these reasons, Nutiva Virgin Coconut Oil was worth less than what plaintiff paid for it.

103.   Instead of receiving a product that had actual healthful qualities, the products that plaintiff and the Class received were not healthy, but rather their consumption causes increased risk of CHD, stroke and other morbidity.

104.   Plaintiff would not have purchased Nutiva Virgin Coconut Oil if he knew the product was misbranded pursuant to California and FDA regulations, or that its claims were false and misleading.

105.   Plaintiff lost money as a result of Nutiva's deceptive claims and practices in that he did not receive what they [sic] paid for when purchasing Nutiva Virgin Coconut Oil.

106.   Plaintiff detrimentally altered his position and suffered damages in an amount equal to the amount he paid for the product.

12.   The Underlying Complaint alleged individual and putative class claims for: (1) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) Violations of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.; (4) Breach of Express Warranties, Cal. Com. Code § 2313(1); and (5) Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314.

13.   In addition to restitution and injunctive relief, the Underlying Complaint sought "actual damages in the amount of the total retail sales price of the Nutiva coconut oils products sold throughout the Class Period to all Class Members," "punitive damages," attorneys' fees and costs.

14.   On December 5, 2016, plaintiff Preston Jones, along with a newly added named plaintiff, Shirin Delalat, filed a First Amended Complaint in the Underlying Action (the "Underlying FAC").  Many of the substantive allegations in the Underlying FAC mirror those in the original Underlying Complaint.  The Underlying FAC additionally alleges, for the first time, that Mr. Jones, Ms. Delalat and similarly situated Californians suffered harm as a result of using Nutiva's coconut oil products.  A true and correct copy of the Underlying FAC is attached hereto as Exhibit "2."

15.   The Underlying FAC specifically alleges that:

99.   By consuming Nutiva's Virgin Coconut Oil, plaintiff Jones and other members of the class suffered impaired arterial endothelial function.

100.   By consuming Nutiva Virgin Coconut Oil, plaintiff Jones' and other class members' risk of CHD and other morbidity has increased.

* * *

110. Plaintiff Shirin Delalat purchased Nutiva's Extra Virgin Coconut Oil and Virgin Coconut oil on multiple occasions over the past several years ….

111. In purchasing Nutiva Extra Virgin and Virgin Coconut Oils, Ms. Delalat read and relied on labeling claims that made the products seem healthy, including, inter alia, "world's Best Cooking Oil," and "100% Less Cholesterol than Butter."

112. Ms. Delalat regularly consumed the Nutiva Extra Virgin and Virgin Coconut Oil, usually several tablespoons per day, including at certain times directly eating at least one tablespoon per day, adding it to her coffee, as well as cooking foods, like eggs and chicken, with the oil.

* * *

115. By consuming Nutiva's Virgin Coconut Oil, plaintiff Delalat and other members of the class suffered impaired arterial endothelial function.

116.  By consuming Nutiva Virgin Coconut Oil, plaintiff Delalat's and other class members' risk of CHD and other morbidity has increased.

* * *

123. Instead of receiving products that had actual healthful qualities, the products that plaintiff and the Class received were not healthy, but rather when plaintiff and the class consumed the products, their risk of CHD, stroke and other morbidity increased.

124. Plaintiff would not have purchased Nutiva Extra Virgin and Refined Coconut Oils if she knew the product were [sic] were misbranded pursuant to California and FDA regulations, or that their claims were false and misleading.

125. Plaintiff lost money as a result of Nutiva's deceptive claims and practices in that she did not receive what they paid for when purchasing Nutiva Extra Virgin and Refined Coconut Oil.

126. Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the product.

16.   Despite new allegations of "increased risk" of "morbidity" and "impaired arterial endothelial function," the Underlying FAC seeks the same

-7-

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

economic relief prayed for in the original Underlying Complaint, namely injunctive relief, restitution, "actual damages in the amount of the total retail sales price of the Nutiva coconut oils sold throughout the Class Period to all Class Members," "punitive damages," attorneys' fees and costs.

**B.      The Commercial General Liability Policies**

17.      Peerless issued insurance policies to Nutiva under policy number CBO 8848518 for the following six periods: March 1, 2011 to March 1, 2012; March 1, 2012 to July 1, 2012; July 1, 2012 to  July 1, 2013; July 1, 2013 to July 1, 2014; July 1, 2014 to July 1, 2015; and July 1, 2015 to September 1, 2015 (collectively, the "Peerless Policies").  True and correct copies of the Peerless Policies are attached hereto as Exhibits "3" through "8", respectively.

18.      The Peerless Policies, subject to their terms, conditions, limitations, and exclusions, each contain commercial general liability coverage, with the following each occurrence and aggregate limits: $1,000,000 Each Occurrence Limit; a $1,000,000 Personal and Advertising Injury Limit; a $2,000,000 General Aggregate Limit (Other Than Products-Completed Operations); and a $2,000,000 Products-Completed Operations Aggregate Limit.

19.      The Peerless Policies include Commercial General Liability Coverage Form CG 00 01 10 01 (the "Peerless CGL Coverage Form"), which provides, in part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may,

at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. . . .

\* \* \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1.   Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty

to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result It. But:

**(1)** The amount we will pay for damages is limited as described in Section **Ill – Limits Of Insurance; and**

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A**  and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

## SECTION V - DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".[1]

\* \* \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

**20.** The Peerless CGL Coverage Form includes the following exclusions:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

---

[1] Effective March 1, 2012, the Peerless Policies included form number GECG 635 1208, which replaced this subsection g. with the following: "Infringing upon another's copyright or slogan in your 'advertisement'."

-11-

* * *

## 2.    Exclusions

This insurance does not apply to: . . .

* * *

o.    **Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

* * *

## 2.    Exclusions

This insurance does not apply to:

* * *

c.    **Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

* * *

g.    **Quality Or Performance of Goods – Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to confirm with any statement of quality or performance made in your "advertisement".

21.    West American issued insurance policies to Nutiva under policy number BKW (16) 56 60 96 07, for the period September 1, 2015 to July 1, 2016, and under policy number BKW (17), for the period July 1, 2016 to July 1, 2017 (collectively, the "West American Policies").  True and correct copies of the West American Policies are attached hereto as Exhibits "9" and "10," respectively.  The

-12-

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

Peerless Policies and the West American Policies are, collectively, referred to herein as the "CGL Policies."

22.    The West American Policies, subject to their terms, conditions, limitations, and exclusions, each contain commercial general liability coverage, with the following each and occurrence and aggregate limits: a $1,000,000 Each Occurrence Limit; a $1,000,000 Personal and Advertising Injury Limit; a $2,000,000 General Aggregate Limit (Other Than Products-Completed Operations); and a $2,000,000 Products-Completed Operations Aggregate Limit.

23.    The West American Policies include ISO coverage form CG 00 01 04 13 (the "West American CGL Coverage Form") which, as amended by forms CG 88 10 04 13 and CG 90 41 01 13, provides, in part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A**  and **B**.

-13-

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. . . .

\* \* \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**   **Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result It. But:

    **(1)**   The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

    **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

-14-

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

## SECTION V - DEFINITIONS

**3.** "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright or slogan in your "advertisement".

-15-

\* \* \*

**17.**   "Property damage" means:

    **a.**   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

24.   The West American CGL Coverage Form includes the following exclusions, as amended by form number CG 88 10 04 13:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\* \* \*

**2.**   **Exclusions**

This insurance does not apply to: . . .

\* \* \*

**o.**   **Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

\* \* \*

**2.**   **Exclusions**

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

This insurance does not apply to:

\* \* \*

**c.    Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

\* \* \*

**g.    Quality Or Performance of Goods – Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**B.    The Umbrella Policies**

25.    American Fire issued insurance policies to Nutiva under policy number UUA (15) 56 17 18 70, effective July 1, 2014 to September 1, 2015, UUA (16) 56 17 18 70, effective September 1, 2015 to July 1, 2016, and UUA (17) 56 17 18 70, effective July 1, 2016 to July 1, 2017 (collectively, the "Umbrella Policies").  True and correct copies of the Umbrella Policies are attached hereto as Exhibits "11" to "13", respectively.

26.    Each of the Umbrella Policies includes Commercial Umbrella Coverage Form CU 60 02 06 97 (the "Umbrella Coverage Form"), as modified by form no. CU 64 34 09 99 Amendment of Insuring Agreement – Known Injury or Damage, which provides, in part:

**I.    COVERAGE**

a.    We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an

-17-

"occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the Insuring Agreement Section II. LIMITS OF INSURANCE.

b. This insurance applies to "bodily injury" and "property damage" only if, prior to the policy period, no "Insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "Insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any "Insured," includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Insured":

(1) reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) received a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

III.  **DEFENSE**

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and

-18-

the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

\* \* \*

## IV. EXCLUSIONS

This insurance does not apply to:

\* \* \*

J. "Personal injury" or "advertising injury":

1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

2. arising out of oral, written, televised, videotaped or electronic publication of material whose first publication took place before the beginning of the policy period;

\* \* \*

K. "Advertising injury" arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. the failure of goods, products or services to conform with advertised quality or performance;

\* \* \*

## V. DEFINITIONS

A. "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

-19-

1.  oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization's goods, products or services;

2.  oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

3.  misappropriation of advertising ideas or style of doing business;

4.  infringement of copyright, title or slogan; or

5.  mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

* * *

C.  "Bodily injury" means physical injury, sickness or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness or disease to that person.

* * *

J.  "Occurrence" means:

1.  as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2.  as respects "personal injury," an offense arising out of the business of any "Insured" that results in "personal injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3.  as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

-20-

K.    "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1.    false arrest, detention or imprisonment;

2.    malicious prosecution;

3.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.    oral, written televised, videotaped or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.    oral, written televised, videotaped or electronic publication of material that violates a person's right of privacy; or

6.    mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

* * *

M.    "Property damage" means:

1.    physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.    loss of use of tangible property that is not physically injured.  All such loss will be deemed to occur at the time of the "occurrence" that caused it.

## C.    The Tender of Defense of the Underlying Action

27.    Nutiva tendered defense of the Underlying Action to Plaintiffs.

28.    After investigating the matter, Peerless and West American accepted Nutiva's tender of defense, under a full reservation of rights, as of December 6, 2016, the date it received notification of the FAC.  American Fire also joined in that reservation of rights.

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

29.     Plaintiffs' reservation of rights includes, but is not limited to, the right to seek reimbursement of attorneys' fees and all costs (collectively, "Defense Costs") incurred in the defense of claims that do not create the potential of covered damages under the CGL Policies and/or the Umbrella Policies.

30.     Peerless and West American have incurred, and will incur, Defense Costs in connection with their defense of Nutiva against the claims alleged in the Underlying Action.

## FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT
### (By Plaintiffs for No Duty to Defend and Indemnify)

31.     Plaintiffs incorporate by reference, as if fully restated here, paragraphs 1 through 30 above.

32.     An actual controversy has arisen, and now exists, between Plaintiffs and Nutiva concerning their rights and obligations under their respective CGL Policies and Umbrella Policies as to any duty, on the part of the Plaintiffs, to defend Nutiva against the Underlying Action.

33.     Plaintiffs contend that they have no duty to defend Nutiva in the Underlying Action under their respective CGL Policies or Umbrella Policies because, among other reasons:

a.     The Underlying Action does not create a potential of damages for "bodily injury" or "property damage" caused by an "occurrence" within the meaning of the CGL Policies and Umbrella Policies.

b.     The Underlying Action does not create a potential of damages for "personal or advertising injury" within the meaning of the CGL Policies and Umbrella Policies.

c.     Even if the allegations could be  reasonably construed as seeking damages for  a "personal and advertising injury" offense, which Plaintiffs deny, the Policies' respective exclusions for "'personal

-22-

and advertising injury' arising out of the failure of goods,
products or services to conform with any statement of quality or
performance made in your 'advertisement'" eliminate any
potential of covered damages.

34.     Plaintiffs are informed and believe that Nutiva contends that West American and Peerless have a primary duty to defend it in the Underlying Action and that, if no such duty exists, then American Fire has a duty to provide it with a defense in the Underlying Action.

35.     Plaintiffs desire a judicial determination of whether they have, or ever had, a duty to defend Nutiva in the Underlying Action.

36.     A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and obligations as aforementioned.  The controversy between Plaintiffs and Nutiva is incapable of resolution without judicial adjudication.  Accordingly, Plaintiffs have no plain, speedy and adequate remedy at law, and request a declaratory judgment, adjudging that Plaintiffs, individually and collectively, have no duty to defend Nutiva under their respective CGL Policies or Umbrella Policies in the Underlying Action, and, consequently, they have no duty to indemnify Nutiva.

37.     Plaintiffs are entitled to a judicial determination of their rights and duties under their respective CGL Policies or Umbrella Policies pursuant to 28 U.S.C. § 2201, which provides:

In a case of actual controversy within its jurisdiction . . . any court of
the United States, upon the filing of an appropriate pleading, may
declare the rights and other legal relations of any interested party
seeking such declaration, whether or not further relief is or could be
sought.  Any such declaration shall have the force and effect of a final
judgment or decree and shall be reviewable as such.

1

2

## SECOND CLAIM FOR RELIEF – REIMBURSEMENT

### (By Peerless and West American For Reimbursement of Defense Costs – Unjust Enrichment)

3

4

38.     Plaintiffs incorporate by reference, as if fully restated here, paragraphs 1 through 37 above.

5

6

39.     Peerless and West American have incurred, and will continue to incur, Defense Costs in connection with their defense of Nutiva in the Underlying Action.

7

8

9

40.     Plaintiffs have no duty under any of their respective policies to afford a defense to Nutiva in the Underlying Action, or to pay all or part of any Defense Costs.  Therefore, Peerless and West American have an equitable and quasi-contractual right, under the principle of unjust enrichment or otherwise, to be reimbursed by Nutiva for some or all Defense Cost which they have paid, or may pay, in connection with the Underlying Action, pursuant to *Buss v. Superior Court*, 16 Cal.4th 35 (1997), *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005), *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001), and related cases.

10

11

12

13

14

15

## PRAYER FOR RELIEF

16

WHEREFORE, Plaintiffs pray for relief as follows:

17

1.     For a judgment on their First Cause of Action that, by reason of the terms, conditions, exclusions and limitations  of the CGL Policies and the Umbrella Policies, Plaintiffs have no duty to defend and indemnify Nutiva against the claims asserted in the Underlying Action and/or to pay some or all of the Defense Costs;

18

19

20

21

22

23

2.     For a judgment on their Second Cause of Action that, by reason of the terms, conditions, exclusions, and limitations of the CGL Policies, Peerless and West American are entitled to restitution and reimbursement from Nutiva for some or all of the Defense Costs paid, or to be paid, in connection with the Underlying

24

25

26

27

28

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT

1  Action, together with interest at the legal rate from the date of

2  their payments of such Defense Costs.

3      3.    On all causes of action, for costs incurred herein; and

4      4.    For such other and further relief as the Court deems just and

5  proper.

6  Dated:  June 12, 2017

7                          SHEPPARD, MULLIN, RICHTER & HAMPTON

8                          LLP

9

10                         By      _/s/ Jennifer Hoffman_

11                                 FRANK FALZETTA
                                   BRENDA BISSETT
12                                 JENNIFER M. HOFFMAN
13                                 Attorneys for Plaintiffs
                                   WEST AMERICAN INSURANCE
14                                 COMPANY, PEERLESS INSURANCE
                                   COMPANY, and AMERICAN FIRE AND
15                                 CASUALTY COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:482990586.2

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT
AND REIMBURSEMENT