UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NUTIVA, INC., <br><br> Defendant. | Case No. 17-cv-03374-HSG <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION TO STAY** <br><br> Re: Dkt. Nos. 34, 36, 39 |

Pending before the Court are the parties' cross-motions for summary judgment, as well as a conditional motion to stay filed by Defendant Nutiva, Inc. ("Nutiva"). For the following reasons, the Court **GRANTS** Plaintiffs' motion for summary judgment, **DENIES** Defendant's motion for summary judgment, and **DENIES** Defendant's motion to stay.

## I. BACKGROUND

### A. This Litigation

Plaintiffs West American Insurance Company, Peerless Insurance Company, and American Fire and Casualty Company (collectively, "Plaintiffs") filed this action for declaratory judgment on June 12, 2017, seeking a judicial declaration that Plaintiffs have no duty to defend or indemnify with respect to *Jones et al. v. Nutiva, Inc.*, Case No. 4:16-CV-00711-HSG (the "Underlying Lawsuit"). Dkt. No. 1. Plaintiffs further seek reimbursement for costs already paid in defense of Defendant in the Underlying Lawsuit. *Id.* On November 30, 2017, the parties filed cross-motions for summary judgment. Dkt. Nos. 34, 36. On December 14, 2017, Defendant additionally filed a conditional motion to stay the case in the event that the Court should deny Defendant's motion for summary judgment. Dkt. No. 39. A hearing was held on January 18, 2018. Dkt. No. 47.

### B. The Underlying Lawsuit

The Underlying Lawsuit, a putative consumer class action against Nutiva, was filed on January 8, 2016. Dkt. No. 33, Fact 9. The Underlying Lawsuit raises claims against Nutiva based on the alleged misrepresentations made on Nutiva's coconut oil product labels. Dkt. No. 33, Ex. 12 ¶¶ 138–177. One of the allegations in the Underlying Lawsuit is that, contrary to Nutiva's characterization of its coconut oil as healthy, consumption of Nutiva coconut oil causes detrimental health effects, including impaired endothelial function. Dkt. No. 33, Ex. 12 ¶¶ 1, 41. Plaintiffs accepted Nutiva's tender of defense in the Underlying Lawsuit, and have paid for, and continue to pay for attorneys' fees and costs in that case. Dkt. No. 33, Facts 13–15.

### C. Stipulated Facts

The parties filed a joint stipulation of undisputed facts prior to filing their respective motions for summary judgment. Dkt. No. 33. In it, the parties have stipulated to the following facts: Plaintiffs issued insurance policies to Defendant for the periods between March 1, 2011 and July 1, 2018. Dkt. No. 33, Facts 1, 4, 7. Each of the insurance policies during that period insures Defendant for legal obligations due to "bodily injury" that is caused by an "occurrence." Dkt. No. 33, Facts 2, 5, 8. "Occurrence" is defined in each of the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

## II. DISCUSSION

### A. Legal Standard

#### i. Motion for Summary Judgment

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must

demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

### ii. Duty to Defend

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). According to the California Supreme Court, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 299 (1993) (emphasis in original). "Even if it is ultimately determined no coverage existed, the insurer [refusing to defend] is liable for defense costs if there was any potential of coverage under the policy during pendency of the action." *Md. Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1828 (1996) (brackets in original).

To determine whether the insurer owes a duty to defend, courts first "compare the allegations of the complaint—and facts extrinsic to the complaint—with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (internal quotation marks omitted). "Under California law, the insurer's duty is not measured by the technical legal cause of

3

action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (internal quotation marks omitted and emphasis in original). "It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not." *Id.* at 1269. "Any doubt as to whether these facts trigger a duty to defend is resolved in favor of the insured." *Pension Tr. Fund*, 307 F.3d at 949. Moreover, "[i]f any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The insurer bears a heavy burden to show that it does not have a duty to defend. While the "insured need only show that the underlying claim *may* fall within policy coverage[,] the insurer must prove it *cannot*." *Montrose Chem.*, 6 Cal. 4th at 300 (emphasis added). Indeed, "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Tr. Fund*, 307 F.3d at 951. "Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Id.* at 949 (internal quotation marks omitted). An insurer's duty to defend can generally be resolved at the summary judgment stage. *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007).

**B.      Choice of Law**

Defendant Nutiva, in its earliest-filed brief, noted that "[w]hether the plaintiffs owe Nutiva a duty to defend is governed by California law." Dkt. No. 36 at 4. However, in Defendant's opposition to Plaintiffs' motion and Defendant's reply in support of its own motion, Defendant for the first time argues that, under California Civil Code Section 1646, the insurance contracts between Defendant and Plaintiffs must be interpreted based on the state laws of the individual states in which the contract is performed. Dkt. No. 38 at 6–8. Defendant contends that, in this case, performance of the contract, and therefore interpretation of the insurance contracts, implicates the state law of every state represented by the putative class. *Id.*

4

"[T]he choice-of-law rule in Civil Code section 1646 determines the law governing the interpretation of a contract, notwithstanding the application of the governmental interest analysis to other choice-of-law issues." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1459 (Cal. Ct, App. 2007), *as modified* (Sept. 5, 2007).

Section 1646 states that:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

Cal. Civ. Code § 1646.

Defendant does not identify where or how the insurance policies "indicate a place of performance." *See Frontier Oil*, 153 Cal. App. 4th at 1450 ("[W]e conclude that a contract 'indicate[s]' a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances."). Rather, Defendant cites *Frontier Oil* for the proposition that insurance contracts are performed in the state(s) where the risk is located. Dkt. No. 38 at 7. Defendant then contends that, because Nutiva sold its products nationwide, the insured risks are located in every state. *See id.* at 7.

Unlike the insurance contract at issue in *Frontier Oil*, which explicitly named locations for coverage, the contracts in this case in no way "indicate a place of performance." *See Frontier Oil*, 153 Cal. App. 4th at 1461–62. Courts have rejected broad readings of § 1646 that would render superfluous the "place where it is made" prong. *See Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV1300545JVSJPRX, 2014 WL 12561603, at *5 (C.D. Cal. Mar. 24, 2014) ("[T]he Court is persuaded that holding that a contract is to be performed anywhere it *could* be performed would eliminate the second prong of the section 1646 test, insofar as virtually every contract would thus indicate a place of performance."); *see also Ameron Int'l Corp. v. Am. Home Assur. Co.*, No. CV 11-1601 CAS AGRX, 2011 WL 2261195, at *5–*9 (C.D. Cal. June 6, 2011) (applying California law to insurance contract because it did not specify place of performance and the policies were delivered to and accepted by the plaintiff in California).

Nutiva's citations to South Carolina, Texas, and Michigan law are therefore inapposite,

5

1 and California law should apply. *See* Dkt. No. 38 at 6–8 (citing *Liberty Mut. Fire Ins. Co. v. JM Smith Corp.*, 602 F. App'x 115, 119–22 (4th Cir. 2015); *Aetna Cas. & Sur. Co. v. Metro. Baptist Church*, 967 F. Supp. 217, 222 (S.D. Tex. 1996); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 421, 427–29 (E.D. Mich. 1998)).

### C. "Occurrence"

The parties dispute whether the complaint in the Underlying Lawsuit alleges "damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence.'" *See* Dkt. No. 33, Facts 2, 5, 8. The policies at issue in this action define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. Plaintiffs do not contest that the "impaired endothelial function" alleged in the operative complaint in the Underlying Lawsuit constitutes a "bodily injury." Rather, Plaintiffs contend that any injury alleged in the Underlying Lawsuit is not the result of an accident. *See* Dkt. No. 34 at 16–21.

The Ninth Circuit, applying California law, has explained that "[i]n the third-party liability insurance context, accidents need not crash or clatter; they need only be unexpected consequences." *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1055 (9th Cir. 2002). The Anthem court explained that "[w]hen the injury [or property damage] is an unexpected or unintended consequence of the insured's conduct, it may be characterized as an accident for which coverage exists." *Id.* (citing *Chu v. Canadian Indem. Co.*, 224 Cal. App. 3d 86, 96 (Cal. Ct. App. 1990)) (brackets in original). The California Supreme Court has clarified that the proper focus is on the insured's conduct: "As a general matter, the meaning of the term 'accident' in a liability insurance policy is settled in California. An accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause . . . Under California law, the word accident in the coverage clause of a liability policy refers to the *conduct of the insured* for which liability is sought to be imposed." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.*, 5 Cal. 5th 216, 221, (2018), *as modified* (July 25, 2018) (internal citations and quotation marks omitted). Further, "[w]hen an insured intends the acts resulting in the injury or damage, it is not an accident merely because the insured did not intend to cause injury. The insured's subjective intent is irrelevant." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App.

6

4th 1281, 1291 (2015) (internal quotation marks omitted).

Defendant Nutiva argues that an "additional, unexpected, independent, and unforeseen happening" may have happened to produce the "impaired endothelial function" alleged by the Plaintiffs in the Underlying Lawsuit. Dkt. No. 38 at 3–4. Nutiva contends that these "unforeseen happenings" might include "diabetes, metabolic syndrome, hypertension, smoking, and more." *Id.* at 4. These are not intervening events that turn an intentional act into an accident.

The Underlying Lawsuit alleges several false advertising claims against Nutiva. *See* Dkt. No. 33, Ex. 12. The false advertising claims in the Underlying Lawsuit do not arise from any "accident," but rather from Nutiva's deliberate marketing decisions[1]. Whether coconut oil causes impaired arterial endothelial function is "hotly disputed." Dkt. No. 38 at 1; Dkt. No. 42 at 8. However, the disagreement in the Underlying Lawsuit is over whether Nutiva's advertising and labeling misled consumers about the purported health benefits of coconut oil in light of its saturated fat content. That Nutiva did not intend these alleged health side-effects is inapposite. *See Navigators Specialty Ins. Co. v. Moorefield Constr., Inc.*, 6 Cal. App. 5th 1258, 1275 (Cal. Ct. App. 2016) ("[W]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury.").

Defendant argues that the alleged health effects could be caused by something other than Nutiva's intentional conduct. More specifically, Nutiva posits a theory that any health effects may have been caused by some problem in the manufacturing process that rendered the coconut oil defective. *See* Dkt. No. 41 at 5. Defendant cites a handful of cases suggesting that a break in the causal chain between the insured's conduct and the damage cited in the underlying action can create a duty to defend. *Id.* at 3–5. However, unlike the present case, each case cited by Defendant involved potential liability for the accidental sale of defective products. *See Colony Ins. Co. v. Vantaggio Farming Corp.*, No. 117CV00714LJOSKO, 2017 WL 3478998 (E.D. Cal.

---

[1] The complaint in the Underlying Litigation alleges that Nutiva intentionally marketed its products with statements such as "100% less cholesterol than butter," "better than butter," and "0g trans fat," and that those statements misrepresented the health effects of those products. Dkt. No. 33, Ex. 12 ¶¶ 58, 59, 62.

7

Aug. 14, 2017) (finding that there were factual disputes about how squash was sold contaminated with pesticides); *Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*, No. 1:10-CV-02051-AWI, 2013 WL 5519605, at *34 (E.D. Cal. Oct. 3, 2013) (finding outstanding factual disputes in the underlying action about whether pesticides were defective or safe for use).

Although Nutiva speculates that its products may have been somehow defective, it does not identify any evidence in support of this suggestion. And Nutiva does not contest that it intended to advertise and sell coconut oil that is 100% fat (the alleged cause of the health effects listed in the underlying complaint). Dkt. No. 33, Ex. 12 ¶ 51; Dkt. No. 43-1 (Nutiva's opposition to motion for class certification in the Underlying Lawsuit) at 8.

No allegations in the Underlying Litigation raise the possibility that Nutiva's actions in labeling, advertising, and selling its coconut oil, were accidental. Therefore, there is no duty to defend, and no duty to indemnify. *See Delgado*, 47 Cal. 4th at 308 n.1 ("Because the duty to defend is broader than the duty to indemnify, a conclusion that here [the insurer] did not have a duty to defend will be dispositive of [the insured]'s claim that [the insurer] had a duty to indemnify.") (internal citation omitted).

### III. DEFENDANT'S MOTION TO STAY

Defendant moves in the alternative to stay the case pending resolution of the Underlying Litigation, should the Court not grant Defendant's motion for summary judgment[2]. Dkt. No. 39. Defendant contends that it remains to be seen "whether the bodily injuries *Jones* alleges were caused by Nutiva's coconut oil in fact were directly caused by that coconut oil or instead whether such bodily injury had other causal factors over which Nutiva had no control." *Id.* at 4–5.

When an insurer seeks a declaratory judgment under an insurance policy and there is an underlying third-party action against the insureds, a stay of the declaratory judgment action is appropriate "when the coverage question turns on facts to be litigated in the underlying action."

---

[2] Defendant appears to revise this condition in its reply by stating that the motion to stay should be granted if "the Court does not resolve this case on summary judgment," (i.e., if the Court were to deny both Plaintiffs' and Defendant's motions for summary judgment). Dkt. No. 45 at 1–2. If Defendant's motion is, in fact, contingent upon the Court failing to resolve this case on the parties' cross-motions for summary judgment, then Defendant's motion to stay is **DENIED** as moot in light of the Court's order granting Plaintiffs' motion for summary judgment.

8

*Montrose*, 6 Cal. 4th at 301–302.

The factual questions in the Underlying Litigation raised by Defendant do not inform the coverage question here. Nutiva admits that the facts involved in determining Plaintiffs' duty to defend are "not in dispute." Dkt. No. 36 at 2. The issue before the Court involves a legal question regarding the meaning of "accident" and whether the injury alleged in the Underlying Litigation fits within that common law definition. That issue is separate from the factual question of causation in the Underlying Litigation. Even if Nutiva argues—or even proves—that the saturated fat in its coconut oil did not cause negative health problems, that would not render the action an "occurrence" for purposes of the insurance policies. Conversely, this Court's ruling that the Underlying Action does not give rise to a duty to defend based on an "occurrence" does not foreclose Nutiva from arguing that the alleged bodily injuries had causal factors beyond Nutiva's advertising and selling of coconut oil. The coverage therefore does not turn on facts to be litigated in the underlying action, and no stay is warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED** and Plaintiffs' motion for summary judgment is **GRANTED**. Defendant's motion to stay is **DENIED**. The clerk shall enter judgment in favor of Plaintiffs and close the file. Both parties shall bear their own attorney fees and costs of suit.

**IT IS SO ORDERED.**

Dated: 8/14/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

9